IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WANSDOWN PROPERTIES CORPORATION N.V.,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-13223 (SMB) |
| 29 BEEKMAN CORP<br><br>Plaintiff<br><br>v.<br><br>WANSDOWN PROPERTIES, CORPORATION N.V., GHOLAN REZA GOLSORKHI, and BLANK ROME, as escrow agent<br><br>Defendants. | **JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiff-buyer herein, 29 Beekman Corp, a New York corporation (the "Buyer"), by and through its attorneys, The Serbagi Law Firm, as and for its Complaint against the defendants, Wansdown Properties Corporation N.V. ("Debtor"), Gholam Reza Golsorkhi ("Golsorkhi") and Blank Rome, as escrow agent ("Escrow Agent"), respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This is an action for fraud based on Debtor's intentional misrepresentation that the proceeds of a $10,300,000.00 sale price for a certain piece of real property would be sufficient to satisfy all claims against Debtor. By Debtor's own admission, its failure to perform under the

1

Contract of Sale (the "Contract") dated September 25, 2019 was the direct result of its own intentional misrepresentation, which caused Debtor to miss the "Final Date" for closing in the Contract, January 31, 2020, causing Buyer significant damage. Buyer properly rescinded the Contract in response to Debtor's breach and requested return of the down payment under the Contract. Debtor refused.  Buyer is entitled to the return of the down payment. In addition to fraud, Beekman is entitled to the return of its down payment because Debtor also breached the plain language of the Contract.

2. In particular, Buyer's obligation to close on the purchase of Debtor's real property at 29 Beekman Place, New York, NY (the "Property") was set forth in Section 51 of the Contract, as 45 days following the entry of a "Confirmation Order" by the applicable bankruptcy court approving such sale.

3. The Contract does not require Buyer to proceed with any diligence or alacrity and allowed Buyer the full 45 days.

4. The Contract had a superseding provision, however, relieving Buyer of any obligation to close if the closing had not occurred by a "Final Date," which was January 31, 2020.

5. Because Debtor, through its own misrepresentation and fraud, had not satisfied all conditions to close on the Final Date as specified in the Contract, Buyer was relieved of all obligation to close and is entitled to the return of its down payment deposit under the Contract with accrued interest; and this reason constitutes an independent basis for such return.

6. The Contract also contained a representation by Debtor that the proceeds from the sale under the Contract would be sufficient to satisfy all claims against Debtor as well as any expenses reasonably expected to be incurred in the anticipated bankruptcy proceeding.

7. Debtor's representation that the proceeds from the sale would be sufficient to satisfy all claims was absolute and not qualified in any way. The Contract required that all representations by Debtor be true as of the closing.

8. Buyer learned on or about December 31, 2019 that Debtor's representation was knowingly false because the sole shareholder of Debtor had a claim against Debtor, which Debtor did not disclose in the Contract.

9. Debtor's false representation, whether found to be knowing or unknowing, constitutes a separate and independent basis for the absence of Buyer's obligation to close through the Final Date and thus a separate and independent basis for Buyer's right to the return of its down payment deposit.

10. Buyer is filing this Complaint to (i) obtain the return of its down payment deposit with interest accrued thereon while held in escrow, and (2) obtain the return of its purchase price payment for certain furniture with interest accrued thereon.

## JURISDICTION

11. The Bankruptcy Court has constitutional authority to enter a final judgment in this adversary proceeding as a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (L), (M), (N) and (O); the Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b); venue is proper in this district pursuant to 28 U.S.C. §§ 1408 et seq.; this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Bankruptcy Court also has continuing jurisdiction over this matter based on the jurisdictional reservations contained in the order approving the sale of the Property for $10.3 million dated and entered January 16, 2020. Jurisdictional allegations are subject to change.

## PARTIES

12.     Buyer is a New York corporation having offices within New York county.

13.     Upon information and belief, Wansdown was incorporated in 1979 under the laws of Curacao, in accordance with Article 38 of the Commercial Code of the Netherlands Antilles and continues to exist under the laws of the Netherland Antilles.

14.     Upon information and belief, Golsorkhi is an individual who is the sole managing director and president of Wansdown and has an address at the Property.

15.     Upon information and belief, Escrow Agent is a limited liability partnership having an address of 1271 Avenue of the Americas, New York, NY 10020.  Escrow Agent is named herein solely in its capacity as the escrow agent relating to the Contract down payment deposit.

## FACTS COMMON TO ALL COUNTERCLAIMS

### Background

16.     Debtor owns certain real property located at 29 Beekman Place, New York, New York (Block 1361, Lot 121) (the "Property").

17.     The Property is improved by a partially constructed steel superstructure designed as a one-family residence.

### The Contract

18.      In the summer of 2019, Debtor had long experienced significant difficulty selling the Property, including litigation involving a prior contract. Debtor had exhausted all of its cash and liquid assets and had no funds to insure the Property or to repair cited violations on the Property, and Debtor was then subject to a judgment in the amount of more than $3 million

4

(the "Judgment"), which had resulted in the scheduling of a sheriff's sale of the Property, which sale was to occur on October 9, 2020.

19. In the context of this desperate situation, Golsorkhi, on information and belief, reached out to a friend pleading with such friend to find a buyer for the Property so that it would not go to sheriff's sale.

20. Such friend reached out to a very close friend of his, Mwafak Peress, who was also a friend of Golsorkhi for more than 15 years, to find a buyer, and Mwafak Peress found a person who was willing to purchase the Property.

21. Such person had previously no interest in acquiring a New York City residential property and was drawn into the transaction predominantly as a favor to the people involved in it.

22. As a result of the circumstances, such buyer was inflexible in paying no more than the minimum amount necessary to satisfy all claims against Debtor, and such buyer would purchase only so long as the closing could be effectuated in the near term and without delay.

23. The price between Buyer and Debtor was specifically negotiated to be the minimum amount that would result in proceeds sufficient to satisfy all liabilities of Debtor, i.e., a $10.3 million purchase price.

24. Satisfaction of all claims was critical to avoid potential obstacles, objections and/or delays to closing.

25. With this understanding, and upon reliance of Debtor's representations, Buyer did not seek a standard mortgage contingency customary in the purchase of residential properties.

26. In the subsequent negotiations between the attorneys for Debtor and Buyer that took place between September 12 and September 26, 2020, Buyer's counsel stated that it wanted to close immediately.

27. Debtor's counsel inserted draft provisions in the draft Contract contemplating a bankruptcy filing immediately after execution of the Contract with a contemplated closing in the end of January.

28. Buyer's counsel objected to such provisions on the ground that Buyer did not want to have unproductive funds tied up for almost four months until the end of January.

29. On September 23, 2019, and on two occasions on September 24, 2019, Debtor's counsel and Buyer's counsel discussed such bankruptcy provisions, and counsel for Debtor stated that Debtor thought it would have a better chance of contesting the Judgment if such contest were brought as an adversary proceeding in a bankruptcy action as opposed to New York State courts. Accordingly, Debtor's counsel insisted that the Property sale be under a bankruptcy plan.

30. At first, Buyer's counsel continued to object to Debtor's attempt to sell the Property through bankruptcy and instead pressed for an immediate closing so its funds, absent a mortgage contingency, would not be tied up waiting for confirmation of a bankruptcy plan.

31. In the telephone conversations on September 23 and 24, 2019, to induce Buyer to accede to a sale under a bankruptcy plan, counsel for Debtor informed counsel for Buyer that the drafts of bankruptcy plan and disclosure statement were already well underway. In such conversations, Debtor's counsel also represented that because the price was set to be sufficient to satisfy all claims, no party would object to the plan, and hence such a plan could be approved quickly and with almost complete certainty. Debtor's counsel also argued that a sale under such

6

a plan would exempt Buyer from the payment of the NY City and NY State "mansion tax," which would otherwise total $334,750, which amount would compensate Buyer for the additional three or four months of delay.

32. On the basis of and in reliance of Debtor's representations, and its counsel's arguments, Buyer acceded to Debtor's wishes, but insisted on inclusion of several provisions to protect Buyer, namely that Buyer would have 45 days after approval of the bankruptcy plan and the sale to close, and that Buyer would be relieved of all obligation to close if that closing date did not occur on or before January 31, 2020, and that such date could be extended only by Buyer, so that Buyer would not have to maintain availability of funds on a 45-day notice for a long period of time.

33. Debtor's counsel agreed to these provisions, confirming that Debtor could have a bankruptcy plan approved more than 45 days prior to January 31, 2020, and these provisions were therefore included in the Contract as material terms.

34. The abovementioned protective provisions were, *inter alia*, as follows (the "Protective Provisions"):

   a. Debtor represented that the proceeds of the sale would be sufficient to satisfy all claims against Debtor as well as any expenses reasonably expected: "Seller represents that the net proceeds of a sale under this Contract would be sufficient to satisfy all claims against Seller and, as reasonably projected, Seller's contemplated estate in bankruptcy . . .." (Section 52.b)

   b. Such representation would have to be true at closing: "This contract and Purchaser's obligation to purchase the Premises are also subject to, and conditioned upon, the fulfillment of the following conditions precedent: (i) The accuracy, as of the date of

7

Closing, of the representations and warranties of Seller made in this contract. . . ." (Section 13.a)

c. Debtor recited in the Contract its intent to file the bankruptcy action "on or before October 7, 2019" and such recital was a consideration of Buyer's entering into the Contract: "in consideration of the foregoing recitals . . . Purchaser and Seller hereby agree . . .." (RECITALS)

d. Buyer would be relieved of all obligation to close if the closing had not occurred by January 31, 2020: "In addition to the conditions set forth in Paragraph 13 of this Contract, this Contract, Purchaser's obligation to purchase the Premises, and Seller's obligation to convey the Premises in accordance with this Contract are also subject to, and conditioned upon, the fulfillment of the following conditions precedent: . . . (d) The Closing shall occur within forty-five (45) days after the entry of the Confirmation Order but no later than January 31, 2020 (such January 31, 2020 date, as extended hereunder, the "Final Date") . . .." (Section 52.d)

e. Buyer had a 45-day period to close following approval of the sale by the bankruptcy court: "The closing of the transactions contemplated herein ("**Closing Date**") shall take place no later than the forty-five (45) days after the Confirmation Order which becomes final and non-appealable . . .." (emphasis added) (Section 51.e)

f. The Closing date had no time-of-the-essence provision, and the Contract does not require Buyer to meet any particular deadline for closing other than 45 days after the entry of a Confirmation Order and does not include any covenant that required Buyer to proceed to closing with diligence.

8

  g. To eliminate any ambiguity between Buyer's obligation to close by the last day of the abovementioned 45-day period (Section 51), and Buyer's relief from any obligation to close after January 31, 2020 (Section 52), a proviso <u>in Section 51</u> made it junior and subject to Buyer's relief from any closing obligation as of the lapse of January 31, 2020: ". . . provided, however, that in no event shall the Closing take place later than January 31, 2020, subject to extension of the Final Date (defined below)." (Section 51.e)

  h. Moreover, to ensure that Buyer would get the benefit of exemption from the "mansion tax" through a sale under an approved bankruptcy plan, a sale was authorized to be done under Bankruptcy Code Section 363 in only the narrowest of circumstances, i.e., only if a bankruptcy plan was "not possible." (Section 51.a)

35. Buyer and Debtor separately negotiated for the sale of certain furniture for a purchase price of $15,000, pursuant to a side letter agreement (the "Side Agreement").

36. The Contract and Side Agreement were signed on or about September 25, 2019. A true and correct copy of the Contract and the Side Agreement is annexed hereto as <u>Exhibit</u> "A."

37. On October 7, 2019, in accordance with the terms of the Contract, Buyer completed payment of the full down payment deposit, which was a total of $1,030,000.00.

38. On October 8, 2019, a day later than was its expressed intent, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the goal of, *inter alia,* seeking a sale of the Property as Buyer wanted.

39. Debtor subsequently requested Buyer to advance the purchase price under the Side Agreement as a pre-payment to relieve pressure on Debtor to pay insurance premiums on

9

the property, and Buyer accommodated Debtor's request through a letter amendment on or about October 10, 2019. A true and correct copy of the letter amendment is annexed hereto as Exhibit "B."

40. Debtor was represented by sophisticated counsel throughout the Contract negotiation period.

### Defendant's Fraud, Abandonment of the Plan, and Entry of a "363" Sale Order

41. On or about December 31, 2019, Pelmadulla Stiftung, Vaduz, a foundation formed under the laws of the country of Liechtenstein, and the sole shareholder of Debtor, filed a proof of claim against Debtor in the amount of $3,242,941.19 (the "Sole Shareholder's Claim"). A true and correct copy of Sole Shareholder's proof of claim is annexed hereto as Exhibit "C."

42. As there is no legal distinction between the sole shareholder of a company and the company itself for purposes of the imputed knowledge of the company, Debtor made a knowing misrepresentation in the Contract, which stated that the claims against Debtor could all be satisfied in full out of the proceeds under the Contract.

43. Debtor has asserted in a separate adversary proceeding that Golsorkhi had, as long ago as February 10, **2016**, "knowledge that the Debtor . . . was insolvent or becoming insolvent, could not pay its bills as they became due, and had outstanding creditors that could not be paid."

44. At the time of such asserted knowledge, Debtor was negotiating to sell the Property for a price around $16mm, and Debtor had not signed a confession of judgment to its current judgment debtor, and no interest had accrued on such judgment.

45.     Upon information and belief, between such time and the date on which Debtor signed the Contract, the Property lost approximately $5mm in value, judgment on the confession of judgment Debtor signed that day was entered, hundreds of thousands of dollars of interest had accrued on such judgment, additional hundreds of dollars of additional interest had accrued on the secured bank debt owed by Debtor, and Debtor had incurred hundreds of thousands of dollars in attorneys' fees.

46.     Therefore, based on the history known by Debtor, by September 25, 2019, the date Debtor signed the Contract, Debtor could not possibly have reasonably determined that the net proceeds of a mere $10.3mm sale of the Property would be sufficient to pay all claims (even regardless of the Sole Shareholder's Claim), and Debtor's misrepresentation to such effect, must have been a fraudulent, made with the specific purpose of inducing Debtor into the Contract, with the plan of either concealing the falsity of the representation through closing, or attempting, in breach of the Contract, to pressure Buyer into a purchase under a 363 sale.

47.     In any event, the Sole Shareholder's Claim, blatantly exposed the falsity of Debtor's misrepresentation, as the proceeds of a sale under the Contract could clearly no satisfy all claims, and so the bankruptcy plan submitted by Debtor would have to have been amended and recirculated for objections, prior to approval.

48.     On information and belief, Debtor abandoned efforts to gain approval of a bankruptcy plan even though such a plan remained possible, and instead sought an order approving a sale under Bankruptcy Code Section 363.

49.     Buyer objected to Debtor's seeking approval of such a "363" sale (which would have resulted in Buyer's additional payment of $334,750 for the "mansion tax")

11

and notified Debtor of its default. Debtor ignored Buyer's default notice and objections.

50. Buyer offered to Debtor that Buyer would close under a "363" sale if Debtor would take responsibility only for Buyer's direct damages that would be incurred by Buyer on account of closing under a "363" sale as opposed to closing under a bankruptcy plan, i.e., payment of the "mansion tax" in the amount of $334,750.

51. Debtor's counsel first accepted a change proposed by Buyer's counsel requiring Debtor to assume responsibility for the "mansion tax," thus remedying the damages that would be suffered by Buyer from Debtor's default.

52. Shortly after accepting such change, Debtor refused Buyer's offer and rejected the proposed change to the sale order and refused to remedy the damages that would be suffered by Buyer from Debtor's default.

53. A sale order was entered on January 16, 2020 (the "January 16th Order").

54. Under the Contract, which provided for a closing by 45 days after the entry of a "Confirmation Order" that later became nonappealable, the closing date under the Contract based on the January 16th Order would have been March 1, 2020.

**Expiration of the Closing Period**

55. Without Buyer's waiving its claim of breach, which Buyer expressly noted, on or about January 29, 2020, Buyer extended the "Final Date" under the Contract to February 10, 2020, but for the expressed purposes of providing Debtor additional time to reconsider its refusal to proceed with a bankruptcy plan and/or providing time for a potential buyer who, Buyer was informed, was in conversation with a broker marketing the Property to become an actual buyer. A true and correct copy of the

12

notice of extension is annexed hereto as Exhibit "D."

56. Again, without Buyer's waiving its claim of breach, which Buyer expressly noted, on or about February 10, 2020, in accordance with Debtor's counsel's repeated requests to extend the Final Date for at least 60 days to give Debtor time to file an amended Bankruptcy plan, Buyer sent to Debtor a notice purporting to extend the "Final Date" under the Contract to May 10, 2020.  A true and correct copy of the notice of extension is annexed hereto as Exhibit "E."

57. On or about February 18, 2020, counsel for Debtor sent a letter rejecting the extension of the Final Date to May 10, 2020 and purporting to notify Buyer of its default under the Contract in failing to previously close. A true and correct copy of the letter is annexed hereto as Exhibit "F."

58. With the Final Date unextended after February 10, 2020, Buyer was released under Section 52.d of the Contract from any obligation to close thereafter.

59. On February 24, 2020, Buyer sent to Debtor a demand for the return of its down payment deposit under the Contract, which it had previously rescinded.  A true and correct copy of such demand is annexed hereto as Exhibit "G."

60. As of the date of this Complaint, Debtor has not responded in any way to such demand, apart from filing this adversary proceeding.

## FIRST CAUSE OF ACTION AGAINST WANSDOWN PROPERTIES CORPORATION N.V.
## (BREACH OF CONTRACT)

**(Misrepresentation of Sufficiency of Sale Proceeds to Satisfy All Claims against Debtor)**

61. Buyer repeats and realleges the foregoing allegations set forth above as though set forth at length herein.

62. The Representation was material because Buyer wanted to be sure to close by January 31, 2020 under a bankruptcy plan that would exempt Buyer from paying the "mansion tax," and the only path for such a closing was if the proceeds of the sale were sufficient to satisfy all claims against Debtor as well as the reasonably expected expenses of the bankruptcy proceeding so no party would have any ground for objecting to the plan, and Buyer did not want to have to maintain funds ready on a 45-day notice trigger beyond December 2019, unless the approval of its purchase of the Property under a bankruptcy plan was in place by then.

63. Buyer relied upon the Debtor's material misrepresentation not only in signing the Contract, ordering a title report under it, performing an engineering study on the Property, and performing other due diligence, but in advancing to Debtor $15,000 under the Side Agreement and the amendment thereof.

64. Buyer's reliance on Debtor's material misrepresentation was reasonable because, not only was the material misrepresentation expressly stated in the Contract, and not only did Debtor agree to an express condition of closing that the representation it made would be true at closing, but the price under the Contract was negotiated to be just sufficient to satisfy all claims, and Debtor's counsel on telephone calls expressly assured Buyer that the proceeds of the sale under the Contract would be sufficient to satisfy all claims as well as the reasonable expenses of the bankruptcy proceeding.

65. Debtor's material misrepresentation was false at least as of December 31, 2020 and has continuously remained false through the date of this complaint.

66. On information and belief, Debtor made the material misrepresentation either knowing it was false or in reckless disregard for its truth as the Sole Shareholder's Claim was made, in fact, by the sole owner of Debtor.

67. Debtor's material misrepresentation was directed at the heart of Buyer's contemplated benefit of the Contract, the misrepresentations constituted a default by Debtor, entitling Buyer to terminate the Contract and the Side Agreement, receive the return of Buyer's down payment deposit with interest accrued thereon, and receive the return of Buyer's advance payment under the Side Agreement with interest accrued thereof.

68. Under Section 13 of the Contract, Debtor was not obligated to close at any time while Debtor's material representation was untrue.

69. Buyer was relieved of its obligation to close under the Contract after February 10, 2020, entitling Buyer to terminate the Contract and the Side Agreement, receive the return of Buyer's down payment deposit with interest accrued thereon, and receive the return of Buyer's advance payment under the Side Agreement with interest accrued thereon.

### SECOND CAUSE OF ACTION AGAINST WANSDOWN PROPERTIES CORPORATION N.V.
### (FRAUD)

**(Knowing Misrepresentation Relating to the Sale Proceeds' Sufficiency to Satisfy All Claims against Debtor)**

70. Buyer repeats and realleges all the foregoing allegations set forth above, as though set forth at length herein.

71. The Debtor knew its material misrepresentation was false when made, and Buyer

15

did reasonably rely on such material misrepresentation, and such material misrepresentation induced Buyer to enter into the Contract in ignorance of its falsity.

72. Buyer has been damaged by Debtor's materially false misrepresentation.

73. Buyer seeks return of the Deposit, attorneys' fees, and punitive damages.

## CLAIMS AGAINST ALL DEFENDANTS

**(Expiration of Closing Period and Return of Deposit and Advance Purchase Price Payment under the Side Agreement)**

74. Buyer repeats and realleges all the foregoing allegations set forth above as though set forth at length herein.

75. Debtor defaulted under the Contract, as set forth herein, and Buyer met all of its contractual obligations.

76. At no time did Buyer default under the Contract.

77. Debtor's assertion (in its letter purporting to notify Buyer of Buyer's default – Exhibit "F." attached to this Complaint) that Buyer was in default under the Contract at that time is wrong for several reasons.

78. In such letter, Debtor's counsel has confused (i) the "Final Date," which is a condition to Buyer's (and seller's) obligation to close, not an affirmative duty on Buyer to close, and, indeed, relieves Buyer of any obligation to close after such Final Date, with (ii) the date of Buyer's affirmative duty to close.

79. Buyer's affirmative duty to close is found only in Section 51.e of the Contract and is 45 days after entry of a "Confirmation Order."

80. The "Confirmation Order" on which such letter relies is the January 16th Order, which was procured by Debtor by breach of the Contract in that the Contract permitted

a sale pursuant to Bankruptcy Code Section 363 only if a bankruptcy plan was "not possible."

81. Buyer demanded return of the down payment deposit under the Contract.

82. Despite due demand, the down payment deposit under the Contract has not been returned to Buyer.

83. In view of the foregoing, Debtor is entitled to a judgment declaring and finding that Buyer is entitled to receive the return of Buyer's down payment deposit with interest accrued thereon and to receive the return of Buyer's advance payment under the Side Agreement with interest accrued thereon, and directing the Escrow Agent to release the down payment deposit under the Contract to Buyer with all accrued interest thereon.

WHEREFORE, Buyer respectfully prays for judgment against Debtor and the Escrow Agent, jointly and severally, consistent with the relief sought and for judgment against Debtor and Golsorkhi for return of the advance payment of purchase price under the Side Agreement with interest accrued thereon, and for attorneys' fees and punitive damages against Debtor for fraud, together with such other and further relief as this Court may deem justified.

Dated: New York, New York
       March 23, 2020

By: /s/ Christopher Serbagi

The Serbagi Law Firm
Attorneys for 29 Beekman Corp
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: (212) 308-8505