## Residential Contract of Sale

Contract of Sale made as of September 25, 2019 between WANSDOWN PROPERTIES CORPORATION N.V., a limited liability company established under the laws of the Netherlands Antilles, Address: 29 Beekman Place, New York, NY 10022 (hereinafter called **"Seller"**), and29 BEEKMAN CORP, a New York corporation, Address: 488 Madison Ave., 11th Fl, New York, NY 10022, (hereinafter called **"Purchaser"**).

RECITALS

WHEREAS, Seller intends to file a petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York on or before October 7, 2019 and its assets will be subject to the jurisdiction of such Court (the "**Bankruptcy Court**").

WHEREAS, Seller desires to liquidate all, or substantially all, of its assets to fund a plan of reorganization under chapter 11 or a plan of liquidation under chapter 7 of the Bankruptcy Code (the "**Plan**").

WHEREAS, Purchaser desires to purchaser the Premises (as herein defined) from the Seller, free and clear of liens, claims and interests of third parties and to have that sale effected pursuant to the Plan, or, if not possible then under section 363 of the Bankruptcy Code ("**363 Sale**"), the applicable Federal Rules of Bankruptcy Procedure and other rules of bankruptcy practice applicable in the Bankruptcy Court, or as otherwise provided in this contract.

WHEREAS, Seller has made good faith efforts to market the Premises for more than 12 months prior to the date of this contract and considers the offer it has received from Purchaser to be the highest and best offer that it could currently obtain as a result of such efforts;

WHEREAS, Seller has conducted a review of its books and records and projects that the net proceeds of the purchase price will be sufficient to pay all of the valid, liquidated debts of Seller, after adjudication of any disputed claims, in full;

WHEREAS, Purchaser acknowledges that the Seller will incorporate this contract into its Plan, or, if necessary, a 363 Sale, to be approved by the Bankruptcy Court as a sale that would generate sufficient net proceeds to satisfy all claims in form mutually and reasonably acceptable to Purchaser and Seller.

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Seller hereby agree as set forth below.

1

1.    **Premises**. Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the **"Premises"**), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as: 29 Beekman Place Street Address: 29 Beekman Place, New York, New York 10022. Tax Map Designation: Block 1361, Lot 121 in the Borough of Manhattan. Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages, together with all rights, including choses in action appurtenant or relating to the Premises.

2.    **Personal Property**. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins, furniture and household furnishings, provided, however, that this sale shall <u>exclude</u> any and all rugs, art work, statues, dining tables, humidors, and personal items such as files, documents, photos and other similar items.

3.    **Purchase Price**. The purchase price is ten million three hundred thousand dollars ($10,300,000.00), payable as follows:

(a) on the signing of this contract, by Purchaser's good check payable to or wire transfer to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 4 of this contract (together with the payment in Section 3(b), the **"Downpayment"**): $200,000.00.

(b) on or before 12:00 noon on October 7, 2019, time being of the essence, by Purchaser's wire transfer to the Escrowee, subject to collection, to be held in escrow pursuant to paragraph 4 of this contract: $830,000.00.

(c) balance at Closing in accordance with paragraph 5: $9,270,000.00.

**4. Downpayment in Escrow**. (a) Seller's attorney (**"Escrowee"**) shall hold the Downpayment in escrow in a segregated bank account at Signature Bank, address: 565 Fifth Avenue, New York, NY 10017, until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur, Escrowee shall continue to hold such amount until otherwise directed by joint Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment, if by check subject to collection, and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

5. **Acceptable Funds**. All money payable under this contract, unless otherwise specified, shall be paid by:

a.    Cash, but not over $1,000.00;

b.    Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

c.    As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $5,000.00;

d.    Direct wire transfer of funds; and

e.    As otherwise agreed to in writing by Seller or Seller's attorney.

6. **Permitted Exceptions**. The Premises are sold and shall be conveyed subject to:

a.    Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

b.    Consents for the erection of any structures on, under or above any streets on which the Premises abut;

c.    Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

d.    Real estate taxes that are a lien, but are not yet due and payable; and

e.    The other matters, if any, including a survey exception, set forth in a Rider attached.

7. **Governmental Violations and Orders**. (a) Seller shall have no obligation whatsoever to comply with any noted, or any notices of, violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises and Purchaser agrees to accept the Premises subject to any and all of the foregoing; provided, however, Seller shall remove and discharge the two currently open violations on the Premises (elevator and façade/structure), Seller shall use reasonable efforts to do so prior to Closing and shall use funds from the Downpayment escrow, if necessary,

to pay the costs thereof, upon Purchaser's prior written approval of such disbursement amount, which approval shall not be unreasonably withheld, conditioned or delayed, provided that Purchaser acknowledges that such release may require Bankruptcy Court approval, and, if Seller shall not remove same prior to Closing, then an escrow shall be maintained by Seller's counsel from and after Closing to pay the remaining amount necessary to discharge such violations, as estimated by Seller's contractor then working on such discharge.

(b) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

8. **Seller's Representations**. (a) Seller represents and warrants to Purchaser that:

(i)     The Premises abut or have a right of access to a public road;

(ii)     Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii)     The "Whereas" recitals are correct in all material respects, except Seller makes not statement as to Purchaser's desires or knowledge;

(iv)     The Premises are not affected by any exemptions or abatements of taxes; and

(v)     Seller has been known by no other name for the past ten years.

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

9. **Condition of Property**. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing, without any reduction in the purchase price or claim of any kind

for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

10. **Insurable Title**. Seller shall give and Purchaser shall accept such title as Madison Title Agency LP, acting as agent for a title insurance underwriter, which Purchaser shall request to be First American Title Insurance Company (the "**Title Company**") shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

11. **Closing, Deed and Title**. (a) **"Closing"** means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a bargain and sale deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

12. **Closing Date and Place**. See Second Rider to Contract of Sale, Paragraph 51(e).

13. **Conditions to Closing**.

(a) This contract and Purchaser's obligation to purchase the Premises are also subject to, and conditioned upon, the fulfillment of the following conditions precedent:

(i)   The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(ii)   Intentionally omitted.

(iii)   Intentionally omitted.

(iv)   The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition (subject to all included personal property), vacant and free of leases or tenancies, together with keys to the Premises.

(v)   Intentionally omitted.

(b) This contract, Purchaser's obligation to purchase the Premises and Seller's obligation to convey the Premises in accordance with this contract are also subject to, and conditioned upon, the fulfillment of the following conditions precedent:

(i)    Delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(ii)    The delivery by the parties of any other affidavits required as a condition of recording the deed.

(c) The Premises shall be in the condition such Premises are in on the date hereof, subject to reasonable wear and tear and Section 27 of the Rider annexed hereto.

14. **Deed Transfer and Recording Taxes**. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer, or the Title Company, in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

15. **Apportionments and Other Adjustments; Water Meter and Installment Assessments**. (a) The following shall be apportioned as of midnight of the day before the day of Closing:  taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

16. **Allowance for Unpaid Taxes, etc**. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less

than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

17. **Use of Purchase Price to Remove Encumbrances**. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

18. **Title Examination; Seller's Inability to Convey; Limitations of Liability**.

(a) Purchaser shall order an examination of title in respect of the Premises from the Title Company promptly after the execution of this contract. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b) (i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called **"Defects"**), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same)

and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights; obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 20 shall survive the termination of this contract.

19. **Affidavit as to Judgments, Bankruptcies, etc**. If the Premises are sold other than pursuant to the contemplated Bankruptcy Court order, and a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

20. **Defaults and Remedies**. (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

21. Intentionally omitted.

22. **Notices**. Any notice or other communication (**"Notice"**) shall be in writing.

23. **No Assignment**.  Purchaser may not assign this contract without the prior written consent of Seller, provided, however, that Purchaser may assign this contract, without the prior written consent of Seller, to an affiliate of Purchaser in which Purchaser and its direct and indirect owners owns and controls a greater than fifty percent (50%) economic and managerial interest and any such affiliated assignee assumes in writing all of the obligations of Purchaser to be performed under this contract.  No assignment of this contract shall relieve Purchaser from any of its obligations set forth herein.  Any assignment made or attempted in contravention of this Paragraph 23 shall be null and void. Notwithstanding anything to the contrary contained in this contract, any and all assignments of this contract shall be subject to the approval of the Bankruptcy Court; Seller shall consent to and support and cooperate with request for such approval of any assignment permitted under this Section 23.

24. **Broker**. Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

25. **Miscellaneous**. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

*[No further text appears on this page. Signatures appear on the following page.]*

**IN WITNESS WHEREOF,** this contract has been duly executed by the parties hereto.

**SELLER:**                                                    **PURCHASER**

WANSDOWN PROPERTIES CORPORATION N.V.,          29 BEEKMAN CORP,
a limited liability company established under the laws    a New York corporation
of the Netherlands Antilles

By:_____                          By:_____
Name: Gholam Reza Golsorkhi                         Name: Seth A. Akabas
Title: President and Managing Director              Title: President

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 4 above.

BLANK ROME LLP,
as Escrowee

**PREMISES:**

Section:_____
Block: 1361
Lot: 121
County or Town: Manhattan
Street No. Address: 29 Beekman Place

Schedule A

[legal description attached hereto]

SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Beekman Place, distant eighty feet five inches northerly from the corner formed by the intersection of the easterly side of Beekman Place and the northerly side of East 50th Street;

RUNNING THENCE easterly and parallel with East 50th Street, and part of the way through a party wall, one hundred feet;

THENCE northerly and parallel with Beekman Place, twenty feet;

THENCE westerly again parallel with East 50th Street and part of the way through a party wall, one hundred feet to the easterly side of Beekman Place;

THENCE southerly along the easterly side of Beekman Place, twenty feet to the point or place of BEGINNING.

Premises known as and street number 29 Beekman Place, New York, NY

RIDER TO RESIDENTIAL CONTRACT OF SALE BETWEEN
WANSDOWN PROPERTIES CORPORATION N.V., AS SELLER, AND
29 BEEKMAN CORP, AS PURCHASER
PREMISES:  29 BEEKMAN PLACE, NEW YORK, NEW YORK

This Rider is a part of the captioned Residential Contract of Sale (the "Contract") to which it is annexed.  In case of any contradiction, inconsistency or overlapping coverage between any of the following provisions and the provisions of the main portion of this Contract, the following provisions of this Rider shall govern.

26.     Supplementing paragraph 4 of the Contract, Purchaser shall have no liability for the fees, costs or expenses of the Escrowee for operation of the Downpayment escrow in the ordinary course or if Escrowee represents Seller in any dispute.

27.     If the Premises shall have been damaged or destroyed prior to the Closing (a) to the extent of $200,000 or less, then this Contract shall continue in full force and effect, and Seller shall forthwith assign to Purchaser all rights of Seller's to the insurance proceeds due by reason of said damage (or if none is due, the purchase price shall be reduced accordingly), or (b) to the extent of any amount greater than $200,000, then Purchaser may, at Purchaser's option, (i) elect to continue this Contract in full force and effect, in which case Seller shall forthwith assign to Purchaser (subject to Closing) all rights of Seller rights to the insurance proceeds due by reason of said damage (or if none is due, the purchase price shall be reduced accordingly), or (ii) elect to terminate this Contract, and thereafter neither party hereto shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded, with interest, to Purchaser.

28.     Seller represents and warrants that Seller has not received, and is not aware of, any written notice for emergency repairs or to repair sidewalks adjacent to the Premises that have not heretofore been removed of record.  If any mechanic's lien based upon services rendered, or goods supplied, to the Premises prior to the Closing is discovered or levied and is or becomes of record, then the Seller shall remove same prior to Closing.

29.     Intentionally omitted.

30.     If any lien, claim, violation, failure of condition, breach or encumbrance of any kind, other than such as Seller is permitted hereunder to convey title subject to, (collectively, "Defects") exists with regard to the Premises, then Seller shall use Seller's commercially reasonable  efforts to remove same on or prior to Closing, but shall not be obligated to spend more than $250,000  therefor, and at any time prior to Closing may notify Purchaser that Purchaser will be required to accept either: (a) a termination of the Contract under Seller's inability to convey title as set forth in the Contract; or (b) the Closing with the Premises subject to such Defect in consideration of a reduction in the purchase price equal to the difference, if any, between $250,000  and all funds already expended by Seller to remove such Defect; provided, however, that any such Defect created

13

affirmatively by or on behalf of Seller or by Seller's failure to pay amounts due and owing by Seller shall be removed by Seller out of the proceeds of the sale of the Premises.

31. No Defect will be acceptable, nor shall Purchaser be obligated to close subject to it, unless the Title Company will omit such Defect from Purchaser's title insurance policy. For clarity, the Title Company willingness to insure against collection of same from the Premises will not be a sufficient satisfaction of such Defect; provided, however, that if a Defect to title shall arise, Seller shall have a reasonable time to remove such Defect. Any requested adjournment by the Seller and/or any attempt by Seller to remove such Defect, shall not be or be deemed to be an admission that a Defect to title does exist. If Seller fails after a reasonable time to remove any such Defect to title that Seller is required hereunder to remove, then Purchaser shall be entitled to terminate this Contract by notice to Seller, in which case Purchaser shall receive back the entire Downpayment, and neither party hereto shall have any further obligation to the other.

32. Seller shall execute such title affidavit as the Title Company shall reasonably request in order for the Title Company to insure title as contemplated herein.

33. If condition in paragraph 13 of the Contract or a representation in paragraph 9 of the Contract shall not be satisfied or true, as applicable, at Closing, then, at Seller or Purchaser's option: the Closing shall be adjourned for such reasonable period for Seller to remedy any such defect; or the Closing shall be effected and the purchase price under the Contract reduced by the reasonable cost of remedying any such defect.

34. Seller shall maintain the Premises in its current condition, subject to ordinary wear and tear and natural deterioration, between the execution hereof and Closing.

35. No limitation of representations and/or warranties shall in any way limit any warranty or representation expressly stated in the Contract.

36. All notices required under this Contract shall be made in writing and shall be sent by Certified Mail, Return Receipt Requested, or by facsimile or email, however all notices delivered by facsimile or email shall be deemed given on the day indicated on the confirmation of receipt if prior to 3:00 p.m. on a business day at the place of receipt, and otherwise on the next business day, to the address of party set forth below, and a confirmation copy should be sent out by Certified Mail, Return Receipt Requested on the day the e-mail shall be deemed given. The attorneys of parties hereto may give notices hereunder. Notice shall be deemed given on the date signed for or not accepted by the addressee on first attempted delivery. Any party hereto may change the address set forth below to which notice addressed to said party is to be thereafter sent, by sending written notice of said new address to the other party to the Agreement. The addresses to which notices are to be sent (until said addresses are changed as herein authorized) are:

| | |
|---|---|
| Seller: | WANSDOWN PROPERTIES CORPORATION N.V.<br>29 Beekman Place<br>New York, NY 10022 |
| With a copy to: | BLANKROME<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Attn: Lawrence F. Flick II, Esq.<br>flick@blankrome.com |
| Purchaser: | 29 BEEKMAN CORP<br>c/o Akabas & Sproule<br>11th Floor<br>488 Madison Avenue<br>New York, NY 10022<br>Attention: Seth A. Akabas<br>Email: SAkabas@akabas-sproule.com |
| With a copy to: | Akabas & Sproule<br>11th Floor<br>488 Madison Avenue<br>New York, NY 10022<br>Jesse Greene, Esq.<br>Fax: 212-308-8505<br>Email: JGreene@akabas-sproule.com. |

37. Intentionally omitted.

38. If Seller defaults under the Contract, and Purchaser is entitled to file a lis pendens against the Premises, then Purchaser shall be permitted to record a copy of this Contract in connection with enforcing its rights hereunder.

39. Any error made in the adjustments under Paragraph 15, shall be corrected and the appropriate adjustment payment made. This Section 39 shall survive Closing.

40. At Closing, Seller and Purchaser shall deliver a prepared and fully executed (i) NYC Real Property Transfer Tax Return, (ii) Combined Real Estate Transfer Tax Return, Credit Line Mortgage Certificate, and Certification of Exemption from Payment of Estimated Personal Income Tax (i.e., TP-584 Form), and (iii) NYS Real Property Transfer Report (i.e., RP-5217). Any provision in the foregoing sentence notwithstanding, if the Premises are sold hereunder other pursuant to the contemplated Bankruptcy Court order, then: At Closing, Seller and Purchaser shall deliver a prepared and fully executed (i) NYC Real Property Transfer Tax Return and Seller shall deliver a bank check, in payment of the tax or filing fee owed thereon, (ii) Combined Real Estate Transfer Tax Return, Credit Line

Mortgage Certificate, and Certification of Exemption from Payment of Estimated Personal Income Tax (i.e., TP-584 Form) and Seller shall deliver a bank check, in payment of the tax or filing fee owed thereon except that Purchaser shall be responsible for the NYS and NYC "Mansion Tax.", and (iii) NYS Real Property Transfer Report (i.e., RP-5217). Seller and Purchaser shall pay promptly any tax due and interest and penalties, if any, thereon, as required under this Section 40, and each shall indemnify the other therefrom and from any cost, claim and expense (including reasonable attorneys' fees relating thereto or to the enforcement of this indemnity) incurred in connection therewith. The obligations under this paragraph 40 shall survive Closing.

41. Intentionally omitted.

42. In addition to any other "subject to" clauses contained herein, the Premises shall be sold subject to: (a) any state of facts that an accurate survey of the Premises might reveal; (b) any state of facts that a personal inspection of the Premises might reveal provided the same does not render title unmarketable; (c) any minor variance in connection with any fence, hedge, wall or the like surrounding the Premises, provided such variance does not unreasonably interfere with the continued use of the Premises; (d) recorded rights of way, restrictions and easements that do not prohibit the existing structures or the use of the Premises as a residential dwelling or render title to the Premises unmarketable, or make development of the property impractical; (e) any matters of record or in fact created by (i) Seller after the date of this Agreement with the prior written consent of Purchaser, or (ii) Purchaser; (f) revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises; and (g) such other matters as the title insurer shall be willing, without special premium, to omit as exceptions to coverage.

43. Intentionally omitted.

44. This Contract may be executed in multiple counterparts and executed and delivered by digital means, all of which shall be one and the same instrument and as valid as a paper contract manually signed and delivered by or on behalf of all parties to this Contract.

**IN WITNESS WHEREOF,** this Rider has been duly executed by the parties hereto as of September 25, 2019.

**SELLER:**                                      **PURCHASER**

WANSDOWN PROPERTIES CORPORATION N.V.,       29 BEEKMAN CORP,
a limited liability company established under the laws       a New York corporation
of the Netherlands Antilles

By: _____                      By: _____
Name: Gholam Reza Golsorkhi                  Name: Seth A. Akabas
Title: President and Managing Director         Title: President

**SECOND RIDER TO RESIDENTIAL CONTRACT OF SALE BETWEEN
WANSDOWN PROPERTIES CORPORATION N.V., AS SELLER, AND
29 BEEKMAN CORP, AS PURCHASER
PREMISES:  29 BEEKMAN PLACE, NEW YORK, NEW YORK**

This Second Rider is annexed to and forms a part of the above described transaction and Contract of Sale (the "Contract of Sale" or the "Contract").  If the provisions of this Second Rider conflict with the provisions of the Rider or printed form Contract of Sale to which this Second Rider is attached, the provisions of this Second Rider shall control.

45. The acceptance of a deed by Purchaser or its title agent shall be deemed to be full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Contract, except those, if any, which are specifically stated in this contract to survive delivery of the deed.

46. This Contract shall not be recorded and any attempt to do so shall constitute a material default hereunder.

47. Supplementing Paragraph 6 of the Contract, the Premises are to be transferred subject to the following:

a.   Covenants, easements, consents, agreements and restrictions of record which do not adversely affect the use and enjoyment of the Premises for residential purposes, don't affect marketability of the Premises, do not impose any costs on the owner of the Premises, and do not adversely affect ability to develop or re-develop the Premises; and

b.   Real estate taxes and sewer rents, subject to adjustment as provided in this Agreement.

48. Seller and Purchaser agree that the Property Condition Disclosure Act, enacted pursuant to Chapter 456 of the Laws of 2001 and as Article 14 of the Real Property Law (the "Disclosure Act") requires a seller of residential real property improved by a one to four family dwelling to deliver to a purchaser a property condition disclosure statement in the form prescribed by the Disclosure Act (the "Disclosure Statement") prior to a purchaser's execution of a binding contract of sale.  In lieu of delivering the Disclosure Statement, the Disclosure Act permits a seller to give a purchaser a $500 credit against the purchase price upon the transfer of title (the "Disclosure Credit").  In accordance with the foregoing, Seller hereby elects to give Purchaser the Disclosure Credit against the Purchase Price in lieu of delivering the Disclosure Statement and Purchaser hereby agrees to accept and acknowledges receipt of the Disclosure Credit in lieu of the Disclosure Statement and acknowledges that Purchaser shall have no rights against Seller and Seller shall have no responsibility or liability to Purchaser for not giving the Disclosure Statement.

49. This Contract contains all the terms of the agreement entered into between the parties.  Purchaser acknowledges that neither Seller nor anyone on behalf of Seller has made any representations or held out any inducements to Purchaser as to the physical condition or state of

repair of the Premises, except as expressly set forth herein. In furtherance of Section 9 hereof, Purchaser represents and warrants that Purchaser has inspected or caused to be inspected or waived inspection of the Premises, and is fully aware of the physical condition and state of repair thereof. Seller shall not be responsible or liable for any statements, representations, warranties, promises, conditions, agreements or other information (including, without limitation, verbal or written statements, representations of real estate brokers, or "set-up" furnished by any broker, agent, employee, or other person), relating to the Premises, as to the physical condition, state of repair, expenses, operations, legal occupancy, use or any other matter or thing affecting or relating to the Premises, except as expressly set forth herein.

50. See "Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards" attached as <u>Schedule A</u> hereof, to be signed by Seller, Purchaser and the broker, if any.

51. **Bankruptcy Matters and Closing**.

a . Purchaser acknowledges that the Premises is owned by Seller, and Seller will file a voluntary chapter 11 case pursuant to the Bankruptcy Code and that consummation of the transactions contemplated herein is subject to Seller's receipt of requisite authority under the Bankruptcy Code pursuant to, among other things, the entry of an order confirming the Plan, or if not possible, then approving a 363 Sale, which order shall contain provisions (i) approving the sale of the Property by Seller to Purchaser, free and clear of any and all mortgages, liens, claims, encumbrances and interests, with any such existing and valid mortgages, liens, claims, encumbrances and interests to attach to only the proceeds of the sale  (ii) providing for appropriate injunctions against any actions against Purchaser or the Premises to collect on account of any such mortgages, liens, claims, encumbrances or interests to the fullest extent permitted by the applicable law and rules; (iii) reserving to the Bankruptcy Court jurisdiction to enforce all orders approving and/or matters relating to the sale; (iv) providing that that the Seller and Purchaser are entitled to the relief set forth in Section 1146(a) of the Bankruptcy Code with respect to the Sale if pursuant to a Plan (v) findings that (1) Purchaser has acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code (the "**Confirmation Order**"); (2) adequate notice was provided for the sale pursuant to the applicable laws and rules; (3) the Contract price constitutes the highest and best offer for the purchase of said assets under the circumstances of the Case and represents fair and adequate consideration for the assets, (4) the sale to Purchaser is in the best interests of Seller, its bankruptcy estate, creditors, and equity interest holders; (5) the sale has been conducted on an arms-length basis; (6) Purchaser has made proper disclosures of any and all connections between Purchaser and Seller; (7) Purchaser is not a successor in interest to Seller and is not assuming or otherwise liable for any debts of Seller; (8) the sale is being effected pursuant to and in conjunction with the Plan, if one is being confirmed, and, therefore, Purchaser is entitled to the protections and exemptions provided in and pursuant to Section 1146(a) of the Bankruptcy Code; and (vi) shall otherwise be acceptable to Purchaser in its reasonable business discretion.  provided, however, if Seller does not file such proceeding or it is dismissed for any reason, then this Contract shall remain a binding obligation of Seller to sell and Purchaser to buy the Premises as set forth herein apart from the contemplated Bankruptcy Court proceeding.

b.  Seller shall petition the Bankruptcy Court to approve the sale of the Premises under this Contract, i.e., for clarity, without seeking any other offers, bids or proposals, and shall not propose or request any auction. Seller represents that the net proceeds of a sale under this

149362.00601/121901037v.3

Contract would be sufficient to satisfy all claims against Seller and, as reasonably projected, Seller's contemplated estate in bankruptcy, and Seller shall present the Contract for approval by the Bankruptcy Court in such context. Purchaser's expenses in negotiating this Contract, investigating the Premises and participating in the Bankruptcy Proceeding shall, to the fullest extent permitted by applicable law, be treated as administrative expenses of the bankruptcy estate. If, despite Seller's petition described herein, the Bankruptcy Court orders an auction or if any higher offer is made that the Bankruptcy Court accepts, or if the Bankruptcy Court proceeding is dismissed without approval of the sale under this Contract, then, Seller and Purchaser acknowledge, Purchaser will suffer damages that will be extremely difficult to calculate, and so Purchaser shall be entitled to receive, as liquidated damages and not as a penalty, which, Seller and Purchaser acknowledge, is a reasonable estimate of such damages from any disposition in any manner of the Premises other than to Purchaser or Purchaser's assignee (except on a default by Purchaser not cured following notice), equal to: US$500,000, plus 80% of all gross proceeds of such disposition(s) that are in excess of US$10,800,000 (for clarity.. This Section 51(b) shall survive termination of this Contract.

c. Notwithstanding anything to the contrary contained in this contract, except subject to Section 51(a) above, the obligations of the parties under this contract are subject in all events to the entry by the Bankruptcy Court of the Confirmation Order approving the sale contemplated by this contract and providing, among other things, that the conveyance to the Purchaser at Closing shall be free and clear of all liens, claims, and encumbrances otherwise payable by Seller or Purchaser at the Closing, other than real estate taxes, permitted exceptions and free of all transfer taxes.

d. Seller shall from the date hereof cease all marketing of the Premises, whether direct or indirectly through any other person or entity, and Seller shall respond to any unsolicited communication from a prospective purchaser of the Premises only to the extent to meet Seller's fiduciary duties, and Seller shall cause all of its agents, personnel and affiliates to comply with this Section 51(d); provided, however, in all cases, Seller may depart from compliance with this Section 51(d) to the limited extent as expressly directed by the Bankruptcy Court, if such Bankruptcy Court so directs despite Seller's opposition.

e. The closing of the transactions contemplated herein ("**Closing Date**") shall take place no later than the forty-five (45) days after the Confirmation Order which becomes final and non-appealable, at the office of Blank Rome LLP, 1271 Avenue of the Americas, New York, NY 10020, provided, however, that in no event shall the Closing take place later than January 31, 2020, subject to extension of the Final Date (defined below).

f. In the event Purchaser qualifies as a good faith purchaser for value within the meaning of the Bankruptcy Code section 363(m), Purchaser may request that the Closing Date take place prior to the Confirmation Order becoming final and non-appealable. Purchaser shall give at least two (2) business day's written notice of its election to fix a Closing Date pursuant to this paragraph. Seller shall take all commercially reasonable steps to accommodate Purchaser's request.

52. In addition to the conditions set forth in Paragraph 13 of this Contract, this Contract, Purchaser's obligation to purchase the Premises, and Seller's obligation to convey the

Premises in accordance with this Contract are also subject to, and conditioned upon, the fulfillment of the following conditions precedent:

   a. The Seller shall be a debtor-in-possession, under chapter 11 of the Bankruptcy Code, with the rights, powers, and duties under section 1107 of the Bankruptcy Code and no trustee shall have been appointed.

   b. No order of any court shall have been entered in any action or proceeding instituted by any person that enjoins, restrains, or prohibits the consummation of the transactions contemplated hereby.

   c. The Bankruptcy Court, having jurisdiction over a chapter 11 case of the Seller, shall have entered Confirmation Order, in a form that is not materially different from the proposed order agreed to by the Purchaser and Seller, and the order is final and not the subject of any stay.

   d. The Closing shall occur within forty-five (45) days after the entry of the Confirmation Order but no later than January 31, 2020 (such January 31, 2020 date, as extended hereunder, the "Final Date"); provided, however, that Purchaser may extend such Final Date, on one or more occasions, until the earlier of 30 days after the entry of the Confirmation Order or January 31, 2021 by notice to Seller prior to the passing of the then effective Final Date.

   **IN WITNESS WHEREOF,** this Second Rider has been duly executed by the parties hereto as of September 25, 2019.

**SELLER:**         **PURCHASER**

WANSDOWN PROPERTIES CORPORATION N.V.,  29 BEEKMAN CORP,
a limited liability company established under the laws  a New York corporation
of the Netherlands Antilles

By:_____  By:_____
Name: Gholam Reza Golsorkhi    Name: Seth A. Akabas
Title: President and Managing Director  Title: President

## SCHEDULE A TO SECOND RIDER

### SAMPLE DISCLOSURE FORMAT FOR TARGET HOUSING SALES
### DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT
### AND LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure** (initial)

_____    (a)    Presence of lead-based paint and/or lead-based paint hazards (check one below):

[  ]    Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

[ x ]    Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____    (b)    Records and reports available to the seller (check one below):

[  ]    Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

[ x]    Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** (initial)

_____    (c)    Purchaser has received copies of all information listed above.

_____    (d)    Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

_____    (e)    Purchaser has (check one below):

[  ]    Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

[x ]    Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment** (initial)

_____    (f)    Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify as of September 25, 2019, to the best of their knowledge, that the information provided by the signatory is true and accurate.

**SELLER:**                                          **PURCHASER**

WANSDOWN PROPERTIES CORPORATION N.V.,          29 BEEKMAN CORP,
a limited liability company established under the laws    a New York corporation
of the Netherlands Antilles

By:_____                          By:_____
Name: Gholam Reza Golsorkhi                        Name: Seth A. Akabas
Title: President and Managing Director              Title: President


**AGENT (IF ANY):**

By: _____

**GHOLAM REZA GOLSORKHI**
**29 Beekman Place**
**New York, NY 10022**

September 25, 2019

29 BEEKMAN CORP
c/o Akabas & Sproule
11th Floor
488 Madison Avenue
New York, NY 10022

> Re:  Residential Contract of Sale made as of September 25, 2019 between WANSDOWN
> PROPERTIES CORPORATION N.V., a limited liability company established under the laws
> of the Netherlands Antilles, and 29 BEEKMAN CORP, a New York corporation

Dear Ladies and Gentlemen:

You and I hereby agree as follows.

In connection with the subject contract (the "Contract") you shall purchase, and I shall sell, the mirrors and chandeliers in the Premises (defined in the Contract), which mirrors and chandeliers are owned by me, for a purchase price of $15,000, which amount shall be placed in escrow with your counsel, who shall acknowledge receipt of same to you and to me upon receipt.  Such purchase shall be memorialized by a customary bill of sale at closing under the Contract, and the escrowed purchase price shall be paid at such closing.  You will be responsible for any sales tax on such purchase.

The provisions of the Contract are incorporated herein by reference.

Very truly yours,

GHOLAM REZA GOLSORKHI

Agreed:
29 BEEKMAN CORP
By:
Name: Seth A. Akabas
Title:  President